## DEWEY v. LATSON et al.

The sale of the equity of redemption of mortgaged premises, and assignment of the rents thereof until foreclosure and sale to a creditor, cannot operate as a fraud upon the mortgagee, whose rights are secured, and may be enforced by foreclosure.

The collection of the rents and profits by the creditor purchasing, can be no more a fraud upon the mortgagee than would be their application by the mortgagor to the payment of his debts.

The mortgagor having the right to sell the rents and profits, or to apply them to the payment of his debts, except as against a creditor who is hindered, defrauded or delayed thereby, the mortgagee cannot complain, as he is not such a creditor.

APPEAL from the District Court of the Sixth Judicial District.

The plaintiff filed his bill of foreclosure against the defendant, A. C. Latson, making E. Townsend, Joseph Winans and John G. Hyer defendants, as claiming some interest in the mortgaged property, adverse to the plaintiff. The finding of the Court below establishes the following facts:

On the 24th day of September, 1852, A. C. Latson mortgaged the premises which are described in complaint, to Lloyd Tevis, to secure the payment of a promissory note for $5,000, with interest at five per cent. per month, payable monthly; and, if not paid monthly, to be compounded on the first day of March, 1853. There being $5,500 due and unpaid on this mortgage, the same was assigned, together with the promissory note, to Emery Townsend. On the 30th September, 1853,

$1,000 was paid on this note and mortgage. Subsequent to the commencement of this suit, but prior to the filing of his answer, Emery Townsend assigned the said note and mortgage to the plaintiff, and there is now due thereon, interest included to April 27, 1855, the sum of $——. On the 9th day of January, 1852, C. D. Wingate recovered judgment in this Court, against A. C. Latson and others, for the sum of $3,150, besides interest and costs, which was immediately thereafter properly docketed. On the 23d of February, 1852, an appeal from said judgment to the Supreme Court was perfected, by giving and filing an appeal bond. On the 6th of June, 1853, said judgment was affirmed by the Supreme Court, with ten per cent. damages and costs; and on the 21st day of June, 1853, was certified by the clerk of the Supreme Court to the clerk of this Court, and thereupon the clerk of this Court attached the same to the judgment roll, and entered a minute of the judgment of the Supreme Court on the docket, against the original entry. When said judgment was obtained and docketed, A. C. Latson was the owner of the lot in controversy, of another lot on K street—subsequently sold to G. S. Tucker—and one.lot on Third street, and one on Second street, sold in December, 1853, to Frank Denver.

The lot sold to Tucker was conveyed, on the —— day of ————, for the consideration of $4,000. At the time, Emery Townsend had a mortgage upon the property amounting to about the sum of $3,500, which mortgage was older in the date than the mortgage of plaintiff, on the premises in controversy. The $4,000, the proceeds of the sale of the lot by Latson to Tucker, was paid as follows : $2,000 to Townsend, who, in consideration thereof, released his mortgage, or took other security, to wit : a mortgage, dated 30th September, 1853, upon the lot in controversy, for the balance due to him, to wit : $1,500 ; $1,000 was paid to Wingate, and credited on his judgment against Latson *et al.* The remaining $1,000 was paid by Latson for work and labor done and performed on the premises in controversy, and certain other buildings adjacent thereto, and erected by said Latson for plaintiff. The property sold to Denver was for the consideration of $2,500, the full value of the lot. The property has never been released from the judgment lien. Latson, on the 19th day of September, 1853, executed a bond and mortgage to plaintiff on the property in controversy, to secure the payment of $7,000, and interest thereon, at the rate of 2½ per cent. per month, from the 1st day of November, 1853, until paid. Interest was paid on this mortgage up to 1st August, 1854. No part of the principal has been paid, and there is now due on said last mentioned bond and mortgage the sum of $8,557 50, including interest up to the 27th day of April, 1855.

The mortgage executed by Latson to Townsend, on the 30th September, 1853, has not been paid, but there is now due thereon, including principal and interest, the sum of $2,622 57. C. D. Wingate, on the 29th day.of April, 1854, assigned his judgment to John G. Hyer, and there is now due and unpaid thereon the sum of $3,596 39. On the 23d day of January, 1854, A. C. Latson, being in insolvent cir-

Dewey v. Latson.

cumstances, and threatened with a suit at law, conveyed the lot and building in controversy to Jos. W. Winans. At the time of said conveyance, defendants, Messrs, Winans and Hyer, were the attorneys at law of said Latson, and said Latson, at the time, was possessed of no other valuable property. The Court finds that said conveyance to Jos. W. Winans was made for an inadequate consideration—that it was made in contemplation of insolvency, and is void. Defendant, Hyer, has, since the execution of the deed from Latson to Winans, as the agent of Winans, collected on rent, from the lot and building in controversy, conveyed by Latson to Winans, as aforementioned, the sum of $4,775; of which sum he has paid to plaintiff, for interest due on his mortgage; for removing rubbish from the building; for removing liens, and for necessary repairs upon the building—the sum of $2,785 42; leaving a balance in the hands of said Hyer of $1,989 58, properly applicable to the payment of the Wingate judgment, assigned to him.

The evidence as to the contemplated insolvency of Latson, and the inadequacy of the price paid by Winans, is stated and commented on in the opinion of the Court.

Upon the foregoing finding, the Court below entered judgment and decree, as follows: That the amount due on said Wingate judgment, assigned to and held by defendant Hyer, be credited with the sum of $1,989 58; that the proceeds of sale and rent collected from the premises in controversy, and now in the hands of the receiver, be applied as follows, to wit: 1. That the sum of $351 63 be retained by the receiver, in payment of his fees and services; and the sum of $862 50 for his disbursements. 2. That the costs of this suit be paid. 3. That the balance due on the Wingate judgment, held by defendant, Hyer, after crediting the same with $1,989 58, be paid. 4. That the balance in the hands of the receiver be paid to plaintiff, on his judgment obtained in this suit.

Motion for a new trial was made and overruled, and defendants appealed from so much of the judgment as resulted from the decision of the Court that the sale and conveyance, from Latson to Winans, was made for an inadequate consideration, and in contemplation of insolvency, and was void; and that the net amount of rents received thereunder should be deducted from the amount due upon the Wingate judgment; and also from the order overruling the motion for a new trial.

*Winans* for Appellants.

If a party be virtually insolvent, he is still entitled to pay a just debt either with property or money, if the transaction is in good faith and not fraudulent. It is not shown that Latson was virtually insolvent at the time of his conveyance to defendant Winans, but if he had been, the conveyance would have been good, unless it was fraudulently given

either to shield the property from the reach of creditors, or to pay a fraudulent debt.

Was it conveyed to shield it fraudulently from the reach of creditors? The evidence discloses that Latson, at the time, was simply threatened with a suit at law, and that neither defendant Winans, nor defendant Hyer, was aware of this.

That the conveyance was made absolutely without condition or reservation, in payment of a debt, and the property was not worth more than the amount of such debt over and above the incumbrances upon it. The result of the receiver's sale proves it to be worth, at the present time, much less than the incumbrances upon it alone.

Was the conveyance made to pay a pretended debt?

But if plaintiff was really desirous of showing that Winans' and Hyer's services were overcharged, why did he not call those defendants themselves?

Again : If the services of Winans and Hyer had been worth less than the sum agreed upon between them and Latson, was not this purely their and Latson's business? Had they not a right to set their own value on their own services? And if Latson was satisfied, had anybody else a right to complain?

Even if the sale to defendant Winans had been fraudulent in law or in fact, still neither the consideration of such sale, $2500, nor the rents received, about $2000, (which latter sum is all that was ever realized or can be by said defendant from the purchase of said property,) could be a proper offset against the judgment of defendant Hyer, (*pro tanto*,) because the said conveyance was to defendant Winans, and Hyer had only an equitable interest in part of the rents accruing therefrom, out of which he only received from $900 to $1000, or thereabouts, in all; while, on the other hand, the judgment assigned to Hyer belonged to him alone. The rents, therefore, (a little over $1900 in all,) and the amount due under the judgment, were in different rights and to different parties, and could not be subjects of offset, one against the other. If the deed to Winans was fraudulent, and plaintiff was aggrieved thereby, his remedy would be to have the deed set aside, and if equity would permit him, to compel defendant Winans to pay the rents received by him, to wit: $1900, and upwards. But the evidence shows the deed was not fraudulent, and plaintiff evidently made this charge in an experimental way, as by a bill of discovery, to investigate whether it was fraudulent or not, expecting to show some collusive arrangement between defendant Latson, and defendants Winans and Hyer, which the evidence has shown him did not exist.

Dewey had no rights as against Winans, except to foreclose his equity of redemption, nor did Dewey ask in his bill for the equitable relief against Winans, which the Court erroneously granted him, viz. : the payment to Dewey, or for Dewey's benefit, of the rents received by Winans while in possession of the premises.

What higher right had Dewey in the $1900 rents received by Winans, than Winans had? Had Dewey obtained a claim thereto by

attachment, judgment, or otherwise? Even conceding that Dewey was
a creditor when Winans received this money for rent, was not Winans
a creditor also?

Even if the conveyance from Latson to Winans had been fraudulent
to the degree that Winans was compelled to refund the rents received
by him, how could Dewey be entitled to those rents?

If Dewey could not claim the payment to him of the rents received
by Winans, how could those rents be deducted from the amount of
Hyer's judgment? Hyer's judgment had been sustained by the Court,
and the property (in spite of Dewey's rights therein) declared liable for
the payment of that judgment.

A debtor has a right to prefer one creditor to another; and though
the grantor is indebted at the time of making the deed, and judgments
are on the eve of being obtained against him, in the absence of express
fraud in fact, in which the vendee participates, this does not render the
deed inoperative. Little *v.* Eddy, 14 Missouri, 160; Williams and
Battle *v.* Jones, 2 Ala., N. S., 314; Waterbury *v.* Sturtevant, 18
Wend., 353; Beals *v.* Ginnesey, 8 Johns., 446; Kuykendall *v.* Mc-
Donald, 15 Missouri, 416; Phœnix *v.* Day, 5 Johnson, 411; Wright
*v.* Brandis, 1 Carter, (Ind.,) 336; Williams *v.* Jones, 2 Alabama, 314.
And even if a debtor is insolvent, when he transfers his property, that
does not make the conveyance void. Thornton *v.* Lane, 11 Georgia,
459; Hickey *v.* Ryan, 15 Missouri, 62.

And the debtor may make a valid transfer of property to the creditor
sufficient to pay him, although the creditor may know that one object
of the debtor was to avoid payment of another debt. Hentshorn *v.*
Eames, 31 Maine, 93; Ford *v.* Williams, 3 B. Monroe, 554 and 557;
Warland *v.* Kimberlin, 6 B. Monroe, 609; Brown *v.* Force, 7 B. Mon-
roe, 357.

A deed, even if fraudulent as to creditors, is not void, but voidable,
and can only be avoided by a judgment creditor who has taken out at-
tachment or execution, and levied on the property fraudulently con-
veyed. Fox *v.* Willis, 1 Manning, (Mich.,) 321; Owen *v.* Dixon, 17
Connecticut, 498; Swan *v.* Dent, 2 Maryland Ch. Dec., 111; Caswell
*v.* Caswell, 28 Maine, 15 Shep., 232; Williford *v.* Conner, 1 Dev., 379;
Murray *v.* Riggs, 15 Johnson, 587, 588.

This case does not come within the embracement of § 20 of the sta-
tute concerning fraudulent conveyances, etc., for that only makes such
conveyances void as against the person hindered, delayed, or defrauded,
and it is perfectly plain from the succeeding points and authorities, that
Dewey was not delayed, hindered or defrauded, by the conveyance to
appellant.

The grantee of a deed, fraudulent because made with intent to de-
fraud creditors, is only accountable to the creditors so defrauded for the
rents and profits received by such fraudulent grantee, from the time
when the rights of the creditors to call him to any account accrued, and
not before. Jones *v.* Bryant, 13 N. H., 53; Sands *v.* Codwise, 4 John-

son, 536; King v. Wilcox, 11 Paige Ch., 589; Boyd v. Dunlap. 1 Johns. Ch., 478.

Respondent Dewey was a mortgagee of the premises, and could only assert his rights against the property by foreclosure. Guy v. Ide, 6 California, 104.

*Robinson, Beatty & Botts* for Respondent.

When the case was tried there were two principal issues; the one was whether Hyer was entitled to have his Wingate judgment satisfied out of the property. The plaintiff, Dewey, contending that he was not, and relying principally on the Statute of Limitations, as applied to liens. This point was decided in favor of Hyer in the Court below, and also in the Supreme Court.

The other point in controversy was as to whether the deed to Winans was *bona fide* or fraudulent; and if the deed to Winans was fraudulent, what was to be done with the rents collected by Hyer. The Court below found, in effect, as we consider, although the word fraud or fraudulently is not used, that the deed was fraudulent; that it was void, and that the rents collected by Hyer (after deducting what he had paid for repairs, removing mechanics' liens, etc.,) should go to lessen the amount of Wingate's judgment held by him. That the balance of the Wingate judgment should be paid to Hyer out of the rents collected by the receiver and the proceeds of the sale of the property.

The other branch of this case having been heretofore settled by this Court, we will endeavor to show that the finding as to Winans' deed and the application of the rents received by Hyer is in accordance with the law and testimony, and must be sustained.

To show that the deed to Winans was fraudulent, we rely on the following facts:

1. The deed is expressed to be for $15,500, and is a general warranty deed. There is not a word said about its being the right of redemption. There is no exception in the warranty as to mortgages. It is not pretended that any consideration was paid for this property except professional services, which are estimated at from $2,500 to $3,000. The sale of the property does not relieve Latson of any of his debts. Winans and Hyer do not undertake to pay a dollar. If the property does not pay the liens, Latson is still liable. Latson is in embarrassed circumstances—the property is renting for $650 per month—the interest on all the liens and incumbrances is from $300 to $350 per month. He voluntarily deprives himself of $300 or $350 income from the house (equivalent to interest on from $10,000 to $15,000 of debt,) to pay his attorneys a debt of from $2,500 to $3,000. Not only that, but he makes himself liable in his warranty to these same attorneys for $15,500 more.

See Twines' case, 1st vol. of Smith's Leading Cases, as to secret trusts.

For authority as to the weight which such a train of circum-

stances should have against positive assertions by parties in their answer, and witnesses who are charged to be parties to the fraud, I refer to the case of Enders & Hynes v. John and Joshua Swayne, 8 Dana Rep., pp. 103, 112. The language of the eminent jurist who pronounced the opinion (C. J. Robertson,) is so appropriate to the present case that I feel compelled to adopt it. He says : " Now considering the general facts grouped in the opinion, (foregoing statement) it does seem to us that if this whole transaction between these parties be permitted to defeat creditors altogether, but few creditors need ever incur the trouble and expense of prosecuting suits in chancery for vacating colorable conveyances by their debtors, unless the latter and their conveyees will do, what was never done in such cases," (the Chief Justice might here have added, never will be done,) " that is, magnanimously acknowledge that the conveyance was ostensible only." I would also cite Doss et al. v. Tyack et al., 14 Howard, 298, 313 ; Harrison v. Campbell, 6 Dana, 263.

But then the Court does not use the word fraud in its finding. The chancery practice is universal in all appellate Courts, to correct the decree, if wrong, and not to send it back for a new trial unless for some special and urgent reason. See the practice as shown in the following cases : 2 Cal. Rep., 285 ; 1 Johns. Cases, 509 ; 1 J. J. Marsh., 547 ; 3 J. J. Marsh., 81 ; 2 A. K. Marsh., 576 ; 4 Dana, 451, Ky. Rep.

If the deed to Winans was void, he, Winans, could have no interest in the rents, they must go to Latson or his creditors ; the Court finds the rents in hands of Hyer, a judgment creditor, and very properly says they shall extinguish, pro tanto, Hyer's judgment. All that Hyer had paid to creditors of Latson, etc., was allowed. There is no evidence that Hyer ever paid one cent to Winans ; he (Hyer) says in his answer, he passed it to the credit of Winans, but there is no proof of the fact.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY. Mr. Justice HEYDENFELDT and Mr. Justice TERRY concurred.

On an examination of the evidence in this case, I am satisfied that the Court below has fallen into an error in arriving at the conclusion that the sale by Latson to Winans is void, particularly as that conclusion seems to be predicated on the supposed inadequacy of consideration, and the fact that it was made in view of insolvency.

Neither of these conclusions appear to be warranted by the record. As to the inadequacy of the price paid, it is shown that it is about equal to the estimated value of the services performed by Winans and Hyer for Latson, and that, as a matter of fact, the equity of redemption, so conveyed, was worth nothing or something, according to the amount that the property might ultimately sell for. As to the contemplated insolvency, it is not established by the evidence.

It is true that the defendant, Latson, threatened, in the event of a certain suit, to transfer this property, but the threat was made against another party, who is not complaining. The suit was never brought,

and he did not apply for the benefit of the Insolvent Act until a year afterwards.

Granting that the price was inadequate—how was Dewey injured by the transaction ? Latson certainly had the right to estimate his property as low, or the services of Winans and Hyer as high, as he pleased. He was the owner of the equity of redemption in the land, and the rents of the premises, until foreclosure and sale. If he chose to part with these for an uncertain period, to discharge his obligations to other creditors, how could it operate a fraud on Dewey, whose rights were secured by mortgage and might be enforced by foreclosure.

If Latson had authorized Hyer to collect the rents, and apply them to the payment of the debt to himself and Winans, would it be pretended that Dewey, who had no right to the premises until the time for redemption had expired, could recover them in action at law ? How has he been injured by the sale, or how has his condition been changed, so as to enable him to set up this fraud, if any existed ? It is said that the conveyance was coupled with a secret trust, for the benefit of Latson. This fact is not fully established by the evidence ; but, even if it were shown, a parol trust, made upon the execution of an absolute deed, would be void, and if it were not void, and Latson had an interest as against Winans in the property, it would be difficult to see how it could prejudice Dewey.

As between the parties, the deed was valid, and could only be avoided because it had the effect to hinder and delay creditors, which it could not possibly have done, so far as Dewey was concerned, as his rights could not be affected thereby. If he thought proper, upon the representations of Hyer, to refrain from enforcing his rights, that is his own concern ; but it cannot affect the validity of a deed which one party had the right to execute and another to receive.

As we understand the case, Latson was indebted to Winans and Hyer, and, instead of collecting the rents of his property and paying them, he sells them the property itself. He was laboring under no legal disability, and might have parted with it for any price he pleased. The fact that he was not in solvent circumstances did not hinder him from making a *bona fide* sale of it, and no one but a creditor hindered, delayed and defrauded, has any right to complain. Hyer has collected the rents of the premises, as the agent or partner of Winans, and passed them to their joint account ; and they can no more be recovered back than if paid to them by Latson himself.

Judgment reversed and cause remanded.